NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YOUSEFF GENID and LINDA GENID,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION and SETERUS, INC.,<br><br>*Defendants*. | Civil Action No.: 15-cv-06787 (PGS)(LHG)<br><br>MEMORANDUM<br>AND<br>ORDER |

**SHERIDAN, District Judge.**

Plaintiffs Youseff Genid and Linda Genid ("Plaintiffs" or "Genids") bring this action against the Federal National Mortgage Association ("Fannie Mae" or "FNMA") and Seterus Inc. ("Seterus").

The Second Amended Complaint (SAC) alleges (1) violation of the federal Real Estate Settlement Procedures Act, 12 U.S.C. §2601, et seq. ("RESPA") and its regulations, 12 C.F.R. § 1024.1, et seq. ("Regulation X"); (2) violation of the federal Fair Debt Collection Practices Act, 15, U.S.C. §1692, et seq. ("FDCPA"); (3) violation of the New Jersey Consumer Fraud Act, ("NJCFA"); and (4) breach of the covenant of good faith and fair dealing.

Facts and Procedural History

The SAC states the following. The Genids owned real property located at 212 Edison Road, Barnegat, County of Ocean, in New Jersey (the "Property"). (SAC., ¶ 2). On February 4, 2014, JP Morgan Chase Bank, N.A. ("JP Morgan") obtained a judgment in foreclosure against the Genids through its attorneys Phelan Hallinan & Diamond, PC ("Phelan"). (*Id.* at ¶ 7). On or about March 19, 2014, the loan was assigned from JP Morgan to Fannie Mae, and servicing was

1

transferred to Seterus. (*Id.* at ¶ 9). Essentially, Plaintiffs argue that *after* the foreclosure occurred, Defendants violated statutes and regulations that affected the rights of the parties. However, as detailed further below, the rights of the parties changes after foreclosure.

The SAC alleges FNMA offers a program where homeowners who have lost their homes through foreclosure and sale can repurchase the home by paying the full amount owed on the mortgage ("make whole" or "payoff amount"). (*Id.* at ¶ 12). In November 2014, the Federal Housing Finance Agency ("FHFA") allegedly directed FNMA to change its requirements for post-sale properties, which included the expansion of the repurchase program to allow homeowners to repurchase foreclosed property at around its fair-market value. (*Id.* at ¶13).

The Property was sold at a sheriff's sale on April 7, 2015. (*Id.* at ¶ 15). On April 8, the Plaintiffs, through their attorney Joseph A. Chang & Associates LLC ("Chang"), submitted to Seterus a Notice of Error ("NOE") pursuant to 12 CFR §1024.35 of Regulation X of the Mortgage Servicing Act under RESPA, which became effective on January 10, 2014 ("Regulation X"). (*Id.* at ¶ 16). Also, Chang submitted the NOE to Phelan, the firm that represented both Seterus and FNMA. (*Id.*).

On or about the same date, a letter requesting information ("RFI") was submitted to Seterus and Phelan under 12 CFR § 1024.36(d)(2)(i)(B), where Chang notified Seterus and Phelan that Seterus was in violation of 1024.41(g) because the sheriff's sale occurred before the regulations time period. (*Id.* at ¶ 17). The NOE and RFI were allegedly not acknowledged by Defendants or Phelan. (*Id.* at ¶ 18). On April 27, 2015, Chang contacted Phelan to see if Seterus/FNMA would consider a post-sale modification. (*Id.* at ¶ 19). On May 12, 2015, Chang emailed Phelan saying that Plaintiffs sought to submit a fresh modification application, and wanted information about the FNMA Repurchase Program. (*Id.* at ¶ 21).

2

On May 13, 2015, Phelan responded by saying that usually modification is not possible post-sale, but, "A repurchase is different. If your client is able to provide proof of funds and cover the total judgment amount and attorney fees our client would definitely review the offer. I will return contact once our client submits an inquiry." (*Id.* at ¶ 22). On May 27, 2015, Plaintiffs received correspondence, stating, "Even if we are able to approve a foreclosure alternative prior to a sale, a court with jurisdiction over the foreclosure proceeding, or the public official charged without carrying out the sale, may not halt the scheduled sale." (*Id.* at ¶ 23).

On June 4, Chang sent a request (NOE #2) to Seterus and Phelan, requesting information about the repurchase program for fair market value since details about the program are not readily available. (*Id.* at ¶ 24). On June 12, Seterus, through Phelan, sent a letter that they were in receipt of the inquiry and were reviewing it, with no completion date, but a written explanation would be forthcoming. (*Id.* at ¶¶ 25).

On July 21, 2015, correspondence was received by Plaintiffs from Phelan on behalf of Seterus saying that the inquiry was still under review with no stated completion time. (*Id.* at ¶ 26). Phelan said that Seterus no longer services the loan and all questions should be directed to FNMA (even though Phelan represented FNMA and Seterus). (*Id.*). As of this date, FNMA had already begun the eviction process with the sheriff's office, though Seterus allegedly never informed Plaintiffs of this fact. (*Id.* at ¶ 27).

On July 27, 2015, Seterus told Plaintiffs that the inquiry was still being reviewed. On July 29, 2015, the Ocean County Sheriff's Dept. posted an eviction notice with an August 18, 2015 eviction date. (*Id.* at ¶¶ 28, 29). On August 12, 2015, Chang again sent a NOE through Certified mail to Seterus and FNMA and to Phelan, and on August 27, 2015, Chang sent another NOE to

those parties saying that no response had been received from the August 12 letter. (*Id.* at ¶¶ 30, 31).

On August 28, 2015, Seterus sent a letter acknowledging receipt of the inquiry, stating that Seterus was still in the review process, and on September 1, 2015, Seterus sent another letter stating the same. (*Id.* at ¶ 32,33).

On October 15, 2015, the parties appeared before Judge Troncone of the Superior Court of New Jersey, Ocean County, the day the eviction was set. (SAC at ¶ 34). The court rescheduled the eviction to October 22, 2015 due to "irregularities and confusion." (*Id.*) The judge also ordered that the lender's payoff figure be given to Plaintiffs, but no figure was ever provided. (*Id.* ¶ 35). On October 22, the parties appeared again before Judge Troncone, and at that hearing, the attorney for Phelan informed the court that the buyback was not doable and that Phelan was going to proceed with the eviction. (*Id.* ¶ 37). The SAC claims that Phelan's attorney "falsely represented to Judge Troncone that the premises were destroyed by the Plaintiffs, and that three municipal hearings took place on this alleged conduct." (*Id.* ¶ 39). On November 9, 2015, the Genids were evicted. (*Id.* ¶ 43).

On March 15, 2016, Chang served a Request to Access Records upon the Township of Barnegat, to determine whether the Township took any municipal action against Defendants for failure to maintain their property. (*Id.* ¶ 41). The Township responded that no municipal action or records indicated such a failure to maintain or care for their property. (*Id.* ¶ 42).

The original Complaint in this action was filed on September 10, 2015 against FNMA, Seterus and FHFA. An Amended Complaint was filed on November 24, 2015 adding Kyanite and IBM as Defendants. On March 7, 2016, the Court granted Defendants' Motion to Dismiss the Amended Complaint, allowing Plaintiffs' 14 days to amend. The Second Amended

4

Complaint (incorrectly entitled "Third Amended Complaint") in this action was filed on March 21, 2016, dropping all claims against FHFA, IBM and Kyanite, and leaving the claims against FNMA and Seterus. Although dismissed as a defendant, FHFA requested and was granted permission to file an amicus brief.

**Legal Standard**:

Pursuant to FED. R. CIV. P. 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. When analyzing a 12(b)(6) motion, a court must accept the allegations in the Complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court is not required to accept as true mere "unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino, Corp.*, 232 F.3d 173, 184 (3d Cir. 2000).

**Analysis**:

I. **RESPA**

In Count I, Plaintiffs bring claims under RESPA, 12 U.S.C. 2601 et seq. According to 12 C.F.R. 1024.5(a), RESPA applies to "federally related mortgage loans." 12 CFR § 1024.35(d) requires a servicer who receives a NOE to acknowledge receipt of the NOE within 5 days, and §1024.35(e)(1)(B) states that servicers must respond by "Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or by "[c]onducting a reasonable search for the requested information and

providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance." There are similar, though slightly different, requirements for RFIs. Plaintiffs state that by failing to properly respond to the NOEs and RFIs, Defendants violated 12 CFR §§ 1024.35(d) and (e), and 1024.36(c), (d)(1) and (d)(2). A private right of action is provided by 12 U.S.C. § 2605(f).

Defendants claim the repurchase program does not apply to the subject loan. They cite FHFA's announcement on November 25, 2014 ("the Announcement"), which said that the "policy change is limited to Fannie Mae and Freddie Mac REO [real estate owned] inventory of single-family homes as of November 25, 2014." See Announcement, Ex. A to brief of Federal Housing Finance Agency, ECF No. 42. The sheriff's sale occurred on April 7, 2015. SAC., ¶ 18. As a result, Defendants argue that FNMA's REO inventory did not include the Subject Property as of November 25, 2014, as Plaintiffs were the owners of the property up until April 7, 2015.

In response, Plaintiffs contend that the Announcement concerned the "Fair Market Value" program, and they are not only seeking relief under that, but under the "Make Whole" FNMA repurchase program as well. See SAC. ¶¶ 15, 54, 63. Plaintiffs have not cited to this "review process" that FNMA allegedly violated. Plaintiffs have only provided the November 25 Announcement, which both parties agree is inapplicable here. If there is a separate "Make Whole" provision, and if there is a review process for implementing this provision, then Plaintiffs have not provided that.

An issue is whether FNMA or Seterus can even be liable under these regulations. FNMA is not subject to Regulation X because it is not a "servicer" of the loan.

Regulation X defines "servicer" as "a person responsible for servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." *Id.*, § 1024.2. Additionally, Seterus was no longer servicing the Property after the judgment of foreclosure. Under New Jersey law, once a judgment of foreclosure is entered, the mortgage loan is extinguished and merges into the final judgment of foreclosure. *See Virginia Beach Fed. v. Bank of New York*, 299 N.J. Super. 181, 188 (App. Div. 1998). Any repurchase would therefore involve the creation of a new mortgage loan or new purchase agreement. Following the final judgment of foreclosure, Plaintiffs no longer owned the Property and Seterus could not be their servicer. All the communications in question among Plaintiffs, Phelan and Seterus occurred after foreclosure, post-sheriff's sale; it does not appear that RESPA would apply to Seterus here. Count I is dismissed.

## II. New Jersey Consumer Fraud Act

Plaintiffs bring a claim under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. (SAC, ¶¶ 51-77.) The CFA "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Gonzales v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011). To state a NJCFA claim, a consumer must plead (1) an unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the two. *Id.* at 577. The Act prohibits affirmative acts and knowing omissions that rise to deceptive trade practices, as well as violations of regulations adopted by the Division of Consumer Affairs made "in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance...." N.J.S.A 56:8-2.

CFA violations can occur under three different categories: (1) "[a]n affirmative misrepresentation, even if unaccompanied by knowledge of its falsity or an intention to deceive"; (2) "[a]n omission or failure to disclose a material fact, if accompanied by knowledge and intent"; and (3) " 'violations of specific regulations promulgated under the [CFA],' " which are reviewed under strict liability. *Monogram Credit Card Bank of Ga. v. Tennesen,* 390 *N.J.Super.* 123, 133, 914 *A.*2d 847 (App.Div.2007) (internal citations omitted). Unlawful conduct under the CFA is defined as: "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretenses, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A. 56:8-2. An unconscionable commercial practice "[n]ecessarily entails a lack of good faith, fair dealing, and honesty," and "[t]he capacity to mislead is the prime ingredient of all types of consumer fraud." Furthermore, "[m]ere consumer dissatisfaction does not constitute consumer fraud." *In re Van Holt,* 163 F.3d 161, 168 (3d Cir. 1998). In addition, "[t]he misrepresentation has to be one which is material to the transaction ... made to induce the buyer to make the purchase." *Gennari v. Weichert Co. Realtors,* 148 *N.J.* 582, 607, 691 *A.*2d 350 (1997).

Plaintiffs assert that Defendants did not provide information about the FNMA repurchase program, and deceived, concealed and made misrepresentations about it. For example, Phelan never answered Plaintiffs as to why they were not eligible to repurchase the home at market value or what the guidelines were. Defendants allegedly did not engage in the "review" and "investigation" that they said they would. Defendants obtained possession of the property while

8

telling Plaintiffs that they were still reviewing and investigating. Plaintiffs relied on these representations to their detriment, according to the SAC.

Defendants argue that the SAC did not cite to any unlawful practices by FNMA or Seterus or make allegations as to how Plaintiffs detrimentally relied on any misrepresentation. Also, according to Defendants, Plaintiffs lacked any right to repurchase the Subject Property because Plaintiffs lost their redemption rights once the sheriff delivered the foreclosure deed to the purchaser and they did not object. See R. 4:65-5; *Hardyston Nat'l Bank v. Tartamella*, 56 N.J. 508 (1970); *Sovereign Bank, FSB v. Kuelzow*, 297 N.J. Super. 187, 196 (App. Div. 1997). The mortgagee must file a deficiency action and then obtain a judgment in order to have a statutory right of redemption under New Jersey law. See N.J.S.A. 2A:5-4; *Borough of Merchantville v. Malik & Son, LLC*, 218 N.J. 556 (2014). There is no allegation that Plaintiffs timely-filed an objection to the sale, or that any deficiency action was filed, or that any judgment in a deficiency action was entered. According to Defendants, Plaintiffs could only redeem the Subject Property by paying the full amount due on the mortgage with foreclosure costs. *See Brookshire Equities, LLC v. Montaquiza*, 346 N.J. Super. 310, 315 (App. Div. 2002).

Defendants also claim that that there is no reason that Plaintiffs can base their NJCFA claims on the RESPA claims, and therefore, there are no " 'violations of specific regulations promulgated under the [CFA].'" The NJCFA Act provides for the Attorney General of New Jersey to promulgate rules and regulations under the NJCFA. N.J.S.A. 56:8-4. In *Stoecker v. Echevarria*, 408 N.J. Super. 597, 623-24 (App. Div. 2009), the court refused to apply a violation of another statute to the NJCFA because it was not adopted by the Attorney General. RESPA, as a federal statute, was not adopted by the Attorney General.

9

Furthermore, Defendants claim that there are no indications of ascertainable loss or any causal relationship between such loss and unlawful conduct. The NJCFA does not define "ascertainable loss," but the Supreme Court of New Jersey has said that such loss must be "quantifiable or measured," even if not necessarily paid out of pocket. An "estimate of damages, calculated with a reasonable degree of certainty," will suffice. *Thiedermann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 249 (2005). The loss may not be "hypothetical or illusory." *Id.* at 248. According to Defendants, there is no ascertainable loss, and any loss of the Subject Property was due to Plaintiffs' failure to comply with the redemption procedures.

Plaintiffs state that ascertainable loss can be viewed through the benefit of the bargain standard. *Thiedemann*, 183 N.J. at 234 (2005). They assert that the benefit of the bargain here is the lost opportunity to repurchase their home, and the fees and costs associated with that loss. To satisfy the causal relationship element, "only proof of a causal nexus between the [unlawful conduct] and the loss" is required. *Jubelt v. United N. Bankers, Ltd.* 2015 WL 3970227, at *6 (D.N.J. June 30, 2015).

The Court agrees with Defendants that there is no NJCFA violation. Plaintiffs allege that Defendants allowed the eviction process to proceed while indicating that repurchase at a "Make Whole" price was a possibility. However, Plaintiffs were seeking information. Plaintiffs' theory makes little sense because they had the right to redeem throughout the foreclosure process, and failed to do so. It is illogical to think that some repurchase right springs up after foreclosure without some form of agreement. It is also not clear that an alleged RESPA violation can provide a foundation for a NJCFA violation. Therefore, any ascertainable loss here is "hypothetical or illusory," and Count III—the CFA claim—will be dismissed.

**III. Covenant of Good Faith and Fair Dealing**

The SAC also brings claims for violation of the covenant of good faith and fair dealing. Under this principle, parties to a contract may not engage in actions that would have the effect of depriving the right of the other party to receive the benefits of the contract. *See e.g., Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224-25 (2005). Courts hold that "bad motive or intention is vital to an action for breach of the covenant." *Id.* at 396.

Here, there was no contract and the final judgment of foreclosure extinguished Plaintiffs' ownership in the mortgage loan, according to Defendants. *See e.g. Washington Mutual, FA v. Wroblewski*, 396 N.J. Super. 144, 149 (2007) ("Under New Jersey law, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished…As a result, upon entry of a foreclosure judgment, all contractual rights under the mortgage are merged into the foreclosure judgment."). Moreover, Defendants claim that nothing in the mortgage allows for repurchase of the Subject Property after foreclosure sale. (See Mortgage, Ex. C.) The Court agrees that the allegations in the SAC do not indicate that there was an agreement here or that there is any evidence that Defendants had any bad motive or intention. Plaintiffs do not address this claim in their opposition brief. Count IV is therefore dismissed.

### IV. Fair Debt Collection Practices Act

Plaintiffs bring a Fair Debt Collection Practices Act claim only against Seterus relating to the communications between Plaintiffs and Seterus. The Act provides: "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 16923e. The Act also states: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 16923(f).

"A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'" *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163,

1167 (3d Cir. 1987). In this Circuit, a Plaintiff must establish that the debt falls within the meaning of §1692a(5) and that the "debt is one that arises out of a consumer transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." *Peterson v. Portfolio Recovery Assocs.*, 430 Fed. Appx. 112, 115 (3d Cir. 2011).

However, Seterus was not attempting to collect a "debt." As the SAC indicates, Plaintiffs were only requesting that Defendants provide them with a "make whole" number. "[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 266 (3d Cir. 2013). Here, the property was already foreclosed, and Plaintiffs were the ones seeking the information. Since Seterus indicated that Plaintiffs' request for repurchase information was under review, Plaintiffs cannot interpret that to mean Seterus was agreeing to a repurchase or waiving any of its foreclosure rights. Count II of the SAC is dismissed.

## ORDER

THIS MATTER having been presented to the Court upon Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint [ECF No. 38]; and after considering the submissions of the parties, for the reasons stated on the record on June 6, 2016, for the reasons stated herein, and for good cause shown:

IT IS on this __2__ day of ~~July~~ August, 2016, hereby

**ORDERED** that Defendant's Motion to Dismiss the Second Amended Complaint [ECF No. 38] is **GRANTED** and Plaintiffs' Second Amended Complaint is dismissed with prejudice.

_____
PETER G. SHERIDAN, U.S.D.J.